## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT F. BOOTH TRUST, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, ) ) ) | No. 1:09-cv-05314 |
| Plaintiff, ) ) | Hon. Ronald A. Guzman |
| v. ) ) | |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT, and THOMAS J. TISCH, ) ) ) ) ) ) | |
| Defendants, ) ) | |
| and ) ) | |
| SEARS HOLDINGS CORPORATION, ) ) | |
| Nominal Defendant. ) ) | |

### AMENDED CONSOLIDATED VERIFIED DERIVATIVE COMPLAINT

Pursuant to Rule 23.1, Fed. R. Civ. P., plaintiffs Robert F. Booth Trust and Ronald Gross bring this action derivatively, on behalf of nominal defendant Sears Holdings Corporation ("Sears" or the "Company"), for injunctive relief against defendants and allege as follows:

### NATURE OF ACTION

1.     Plaintiffs bring this action to enjoin defendants' continued violation of the prohibition of "interlocking directorships."  Section 8 of the Clayton Act ("Section 8"), 15 U.S.C. § 19, prohibits a person from serving as a director or officer of two or more corporations if:  (a) the combined capital, surplus and undivided profits of each of the corporations exceeds

$26,161,000;[1] (b) each corporation is engaged in commerce; and (c) the corporations are competitors with certain threshold competitive annual sales.  Although the statute contains some exemptions, none apply here.[2]

2.      Two of the directors of Sears – Ann N. Reese ("Reese") and William C. Crowley ("Crowley") – are "interlocking" directors within the meaning of Section 8.  Reese is Chair of the Audit Committee of the Sears board and also sits on the board of Jones Apparel Group, Inc. ("Jones Apparel"), a competitor of Sears in the area of women's clothing and accessories, men's clothing, and women's and children's shoes.  Crowley is a member of the Finance Committee of the Sears board and also sits on the boards of AutoZone, Inc. ("AutoZone"), a competitor of Sears in the area of automotive replacement parts and accessories, and AutoNation, Inc. ("AutoNation"), a competitor of Sears in the area of auto service and repair.

3.      As alleged more fully below, the interlocking directorates of Reese and Crowley violate Section 8. Nevertheless, in March 2009, the Sears Board nominated Reese and Crowley for re-election to the Board and recommended that Sears' shareholders vote to re-elect these directors.

4.      A prior demand on the Board of Sears is excused. Defendant Edward S. Lampert

---

[1] This statutory threshold is adjusted every year as determined by the Department of Commerce and published by the Federal Trade Commission (the "FTC"). 15 U.S.C. § 19(a)(5). On January 13, 2009, the FTC announced the operative threshold amount.

[2] Exempted from Section 8's prohibitions are interlocks for which: (1) the competitive sales of either corporation are less than $1 million (or as of January 13, 2009: $2,616,000); (2) the competitive sales of either corporation are less than 2 percent of that corporation's total sales; or, (3) the competitive sales of each corporation are less than 4 percent of that corporation's total sales. 15 U.S.C. § 19(2)(A)-(C).  The term "competitive sales" is defined as "the gross revenues for all products and services sold by one corporation in competition with the other, determined on the basis of annual gross revenues for such products and services in that corporation's last completed fiscal year" and the term "total sales" means "the gross revenues for all products and services sold by one corporation over that corporation's last completed fiscal year." 15 U.S.C. § 19(2).

("Lampert") owns 54% of Sears, and according to Sears, thereby controls the election of directors to the Sears Board. Lampert, by his control, is thus directly or indirectly responsible for the *ultra vires* acts complained of herein, namely the violations of Section 8. Lampert also designated Crowley to sit on the boards of AutoZone and AutoNation, by virtue of Lampert's substantial stock ownership in both of those companies, as discussed below. Lampert is thus an interested director, as are Reese and Crowley.   In addition, a majority of the seven members of the current Sears Board nominated Reese and Crowley to the Sears Board in or about March 2009 and recommended that Sears shareholders vote for them, in violation of Section 8. Because a majority of the current Board committed these *ultra vires* acts, a pre-suit demand on the current Board would be futile and is excused.

## PARTIES

5.      Plaintiffs Robert F. Booth Trust and Ronald Gross are shareholders of Sears and have been since January 2008.

6.      Nominal Defendant Sears is a Delaware corporation with principal executive offices located at 3333 Beverly Road, Hoffman Estates, Illinois.   In 2005, Kmart Holding Corporation ("Kmart") and Sears, Roebuck and Co. ("Sears, Roebuck")   agreed   to   merge, forming a new company, Sears, the nominal defendant here.   As part of this merger, Kmart contributed seven directors to the new board and Sears, Roebuck contributed three directors. (Form S-4, filed 2/15/05 at 75).   When the merger was consummated on March 24, 2005 (2009 DEF14A at 7), the original 10 directors were:  Lampert, Alan J. Lacy ("Lacy"), Aylwin B. Lewis ("Lewis"), Donald J. Carty ("Carty"), Crowley, Julian C. Day, Michael A. Miles, Steven T. Mnuchin ("Mnuchin"), Reese and Thomas J. Tisch ("Tisch").   In 2008, the Sears Board had declined to eight members:   Crowley, Lampert, Mnuchin, Perry, Reese, Kevin B. Rollins

("Rollins"), Scott and Tisch.   In 2009, the Sears Board was reduced in size to its current membership of seven directors: Crowley, Lampert, Mnuchin, Reese, Rollins, Scott and Tisch.

7.     Defendant Crowley has been a director of Sears from March 24, 2005 to the present.   Crowley is a member of the Finance Committee.   (DEF14A filed 3/17/09 at 8). Crowley became a member of the board of AutoZone on August 18, 2008.  (AutoZone Form 8-K, filed 8/18/08).  Crowley is also President and Chief Operating Officer of Lampert's company, ESL Investments, Inc. ("ESL"), discussed below.  Crowley has also been a member of the board of AutoNation since January 2002.  (AutoNation Form 10-K, filed 3/23/09, at 6).  Crowley is on AutoNation's Compensation Committee and Corporate Governance and Nominating Committee. *Id.* at 9.

8.     Defendant Lampert has been a director of Sears from March 24, 2005 to the present.   Lampert is the Chairman of the Board of Sears and of the Finance Committee. (DEF14A filed 3/17/09 at 8).  Lampert is also Chairman and Chief Executive Officer of ESL, a Connecticut-based private hedge fund.  (DEF14A, filed 3/26/08, at 11).  ESL beneficially owned 49.6% of Sears' outstanding common stock as of February 2, 2008, *id.* at 12, and 54.1% of Sears' common stock as of January 31, 2009.  (2009 DEF14A at 14).  In addition, as of March 31, 2009, Lampert (through his ownership of ESL) became a 43.67% owner of AutoZone. Lampert, through ESL, is also a 45% owner of AutoNation.  (AutoNation Schedule 14A, filed 3/23/09, at 17).  According to Sears, due to Lampert's 54% current ownership of Sears, Lampert has "substantial influence over many, if not all, actions to be taken or approved by [Sears'] shareholders, including the election of directors and any transactions involving a change of control." (2008 Form 10-K, filed 3/17/09, at 10).

9.     Defendant Mnuchin has been a director of Sears from March 24, 2005 to the

present.  Mnuchin is a member of the Audit Committee and is the Chair of the Nominating and Corporate Governance Committee.  (DEF14A, filed 3/17/09, at 8).

10.     Defendant Perry served as a director of Sears from 2006 through May 4, 2009. Perry was a member of the Finance Committee and the Nominating and Corporate Governance Committee.  (DEF14A, filed 3/17/09 at 8).

11.     Defendant Rollins has been a director of Sears from February 20, 2008 to the present.  Rollins is a member of the Audit Committee.  (DEF14A, filed 3/17/09, at 8).

12.     Defendant Scott has been a director of Sears from May 4, 2007 to the present. Scott is a member of the Compensation Committee.  (DEF14A, filed 3/17/09, at 8).

13.     Defendant Tisch has been a director of Sears from March 24, 2005 to the present. Tisch is a member of the Audit Committee and Chair of the Compensation Committee.

14.     Defendant Reese has been a director of Sears from March 24, 2005 to the present. Reese is Chair of the Audit Committee and a member of the Compensation Committee.  She has been a director of Jones Apparel since 2003. (Jones Apparel Schedule 14A, filed 4/12/09, at 5).

15.     The term "Individual Defendants" is sometimes used in this Complaint to refer to defendants Crowley, Lampert, Mnuchin, Perry, Reese, Rollins, Scott, and Tisch.

16.     Plaintiffs bring this action to enjoin Reese from serving simultaneously as a board member of Jones Apparel, and to enjoin Crowley from serving simultaneously as a board member of Sears and AutoZone and AutoNation.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction of this action under Section 16 of the Clayton Act, 15 U.S.C. § 26, for violations of Section 8 of the Clayton Act, 15 U.S.C. § 19.  The Court has supplemental jurisdiction over Plaintiff's state-law claim alleged in Count Three.

18.     Original jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331, 1337.  The Court also has supplemental jurisdiction over Plaintiff's state-law claim pursuant to 28 U.S.C. § 1367.

19.     Venue is laid in this District pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391. Nominal Defendant Sears maintains its corporate headquarters in this District at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

## SUBSTANTIVE ALLEGATIONS

20.     Sears is a Delaware corporation with principal executive offices in Illinois. Defendants Reese and Crowley are "interlocking" directors within the meaning of Section 8, and in March 2009 were nominated and recommended by the Sears Board for re-election.

21.     On August 20, 2009, Sears announced that it had lost $94 million, or 79 cents per share, in the second quarter of 2009. According to a *Barron's* article ("Washed Out," August 24, 2009), the news "hit Wall Street like a massive bunker-blasting bomb."  Sears shares dropped nearly 14% that day.   According to the August 24 *Barron's* article, "Lampert seems to be starving his company, driving away customers with uncompetitive pricing."   Although Lampert responded to *Barron's* in a letter of his own to the editor (*Barron's*, September 17, 2009), Lampert acknowledged that "performance of the company is not where [he] would like it to be." Lampert did not, however, respond to the charge that Sears was driving away customers with "uncompetitive pricing."

**Sears and Jones Apparel**

22.     Sears and the publicly-traded Jones Apparel each have a combined capital, surplus and undivided profit exceeding $26,161,000.  Both are engaged in commerce. The two companies compete with one another in selling women's apparel, footwear and accessories;

men's clothing; and women's and children's shoes.

23.     Sears is a broadline retailer with 2,297 full-line and 1,233 specialty retail stores in the United States.  (*See* Sears 2008 Form 10-K, filed 3/17/09).  Sears reported total revenues for its fiscal year 2008 of $46.8 billion.  (2008 Form 10-K, filed 3/17/09, at 22-23).  (Sears' fiscal year 2008 began on February 1, 2008 and ended on January 31, 2009.  2008 Form 10-K, filed 3/17/09, cover page).  Since the merger with Kmart, Sears conducts operations in three business segments:  Kmart, Sears Domestic and Sears Canada.  Apparel, footwear and accessories are among the product lines offered by the Sears Domestic, Kmart and Sears Canada business segments.  (Form 10-Q, filed 5/2/09, at 18-19).  For fiscal 2008, Sears broke down its segment sales as follows:  Kmart ($16.219 billion); Sears Domestic ($25.315 billion); Sears Canada ($5.236 billion).  (2008 Form 10-K at 88).

24.     As of January 31, 2009, Sears had 1,368 Kmart stores across 49 states, Guam, Puerto Rico and the U.S. Virgin Islands.  Most Kmart stores are one-floor, free-standing units that carry a wide assortment of general merchandise.

25.     The Sears Domestic segment operates 929 broadline stores of which 856 are full-line stores located across all 50 states and Puerto Rico, primarily mall-based locations averaging 133,000 square feet.  Full-line stores offer a wide array of products across many merchandise categories, including "apparel, footwear and accessories for the whole family."  (2008 Form 10-K, filed 3/17/09, at 2).  This segment's product offerings in women's apparel and accessories (handbags, small leather goods, costume jewelry) include Apostrophe, Canyon River Blues, Carhartt, Classic Elements, Covington, Dockers, Lands' End, Levi's, Southpole, and others.  (www.sears.com; 2008 Form 10-K, filed 3/17/09, at 2).  Its product offerings also include men's clothing such as jeans, sweaters, sportswear, casual and dress shirts, casual and dress pants, and

suits and sport coats, among other things.  (www.sears.com (clothing (men's)).   Among the brands of men's clothing Sears sells are the following:  Arrow, Canyon River Blues, Carhartt, Covington, Dockers, Lee, Levi's, Pierre Cardin, and Structure.  The Sears Domestic segment also sells jewelry and watches.  (www.sears.com (jewelry & watches)).   The segment sells a variety of necklaces, bracelets, earrings, and pendants.  Sears sells both costume and fine jewelry (semi-precious, sterling silver, and gold), both at a variety of price points.  Sears also sells a selection of men's watches.  (*Id.*)

26.     Sears operates 73 Sears Essentials/Grand Stores located in 26 states.  (2008 Form 10-K, filed 3/17/09, at 2).  These stores sell all products sold in the "typical mall-based store."  *Id.*

27.     Sears operates Lands' End, Inc., a leading direct merchant of casual clothing, accessories and footwear for men, women and children.  (2008 Form 10-K, filed 3/17/09, at 3).  These products are offered through multiple selling channels including Landsend.com, a leading apparel website, as well as catalog mailings, and international businesses.  (*Id.*).  Lands' End has 14 retail stores, averaging 8,600 square feet, which offer Lands' End merchandise primarily from catalog and internet channel overstocks.  In addition, Lands' End has 222 "store within a store" departments inside Sears Domestic broadline locations.  (2008 Form 10-K, filed 3/17/09, at 3).

28.     Sears also sells an assortment of women's apparel and accessory merchandise, and men's clothing, through its website, *www.sears.com*.   Customers can buy through the Internet and have merchandise shipped to their home or can pick the goods up in one of Sears' full-line specialty stores.  (*Id.*)

29.     Sears conducts retail operations in Canada similar to those conducted by Sears Domestic, with greater emphasis on apparel and other softlines than in the U.S. stores.  (2008

Form 10-K, filed 3/17/09, at 4).   As of January 31, 2009, Sears Canada operated 122 full-line stores, 266 specialty stores (including one Lands' End store), 30 floor covering stores, 1,858 catalog pick-up locations and 106 travel offices.  (*Id.*)  Sears Canada also conducts business over its internet website: *sears.ca.*

30.    Jones Apparel is a leading designer, marketer and wholesaler of branded apparel, footwear and accessories. (*See* Jones Apparel 2008 Form 10-K Annual Report, filed 2/17/08). Jones Apparel designs, contracts for the manufacture of and markets a broad range of women's collection sportswear, suits and dresses, casual sportswear and jeanswear for women and children, and women's footwear and accessories.   *Id.* at 32. Jones Apparel sells women's clothing at a variety of retail price points, depending on quality and style.   *Id.* at 5-7 (Table summarizing products and price points).  Jones Apparel also sells brand name and private label footwear for women and children.  (*Id.* at 6).  Jones Apparel also sells costume, semi-previous, sterling silver, and marcasite jewelry.  (*Id.*)  In 2008, Jones Apparel announced that Wal-Mart would be the exclusive retailer of its l.e.i. brand for juniors, junior plus and girls.  (*Id.* at 34.) Jones Apparel sells its products through a broad array of distribution channels, including better specialty and department stores and mass merchandisers, primarily in the United States and Canada. *Id.* Jones Apparel also operates a network of retail and factory outlet stores and several e-commerce websites.  *Id.* Jones Apparel reported total revenues for fiscal 2008 of $3.6 billion. *Id.* at 30.

31.    Jones Apparel also sells men's accessories and jewelry, neckwear, sportswear, dress and casual shirts, dress slacks, sweaters, suits and jackets, denim, footwear.

32.    Jones Apparel's nationally recognized brands include Jones New York, Nine West, Anne Klein, Gloria Vanderbilt, Kasper, Bandolino, Easy Spirit, Evan Picone, l.e.i.,

Energie, Enzo Angiolini, Joan & David, Mootsies Tootsies, Sam & Libby, Napier, Judith Jack, Albert Nipon and le Suit. *Id.*

33.     As of December 31, 2008, Jones Apparel operated 373 specialty retail stores nationwide, *Id.* at 7. These stores sell either footwear and accessories, or apparel (or a combination of these products), primarily under their respective brand names. *Id*. The Nine West, Easy Spirit, Bandolino and AK Klein retail stores offer selections of exclusive products not marketed to Jones Apparel's wholesale customers. *Id*. Specialty retail stores operated by Jones Apparel also sell products licensed by Jones Apparel, including belts, outerwear, watches and sunglasses. *Id*.

34.     As of December 31, 2008, Jones Apparel also operated 644 outlet stores nationwide. *Id*. Outlet shoe and apparel stores focus on breadth of product line, as well as value pricing, and offer a distribution channel for Jones Apparel residual inventories.

35.     Jones Apparel also operates the following websites which offer Jones Apparel products for sale direct to consumers: *www.ninewest.com*, *www.easyspirit.com*, *www.bandolino.com*, and *www.jny.com*. *Id*. at 8. Through these websites, Jones Apparel markets either footwear and accessories, or apparel, or a combination of these products, primarily under their respective brand names. The selection of products Jones Apparel sells on its websites is consistent with the product offerings in Jones Apparel's corresponding retail stores. *Id*.

36.     Defendant Reese became a member of the Sears Board on March 24, 2005.  Reese has been a member of the Jones Apparel Board since 2003.

37.     Jones Apparel states that "[t]he apparel, footwear and accessories industries are highly competitive."  (Jones Apparel 2008 Form 10-K, filed 2/17/09, at 23).  Jones Apparel warns its investors that:

There is intense competition in the sectors of the apparel, footwear and accessories industries in which we participate.  We compete with many other manufacturers and retailers, some of which are larger and have greater resources than we do.  Any increased competition could result in reduced sales or prices, or both, which could have a material adverse effect on us.  [*Id.*]

**Sears, AutoZone and AutoNation**

38.     Sears sells a variety of auto parts and accessories through its Kmart, Sears Domestic and Sears Canada business segments.  Sears sells a full line of auto parts and accessories, as set forth on its website, including, but not limited to, the following:  tires, custom wheels, batteries and chargers, car top and hitch carriers, exterior and interior accessories, under car and hood items (*e.g.*, air intakes and fuel systems; exhaust and emissions; suspension and chassis; engine cooling systems; transmission and drive train; filters; windshield wipers and washers; engine parts; spark plugs), car care and garage items, outdoor car shelters, bed and tailgate and tonneau and ramp items for trucks; truck boxes, electrical systems, hitches and towing and trailers, suspension, automotive electronics, mechanics' tools, air intake and fuel systems, motorcycle and all terrain vehicle items, RV's and camping items, and car art.  (*See* *www.sears.com* automotive and tire department).

39.     Sears sells a variety of auto parts brands, such as DieHard, Michelin, Goodyear, Bridgestone, BF Goodrich, Dunlop, Bestop, Curt, Truxedo, K and N and Rausch Performance.  (*Id.*)

40.     Sears also services and repairs autos at its Sears Auto Centers.  As part of its Sears Domestic business segment, Sears operates 782 Sears Auto Centers in association with full-line stores.  (2008 Form 10-K, filed 3/17/09, at 3).  In addition 27 Sears Auto Centers are operated out of Sears Essentials/Grand Stores.  (*Id.*)  There are 30 free standing Sears Auto Centers that operate independently of full-line stores.  (*Id.*)

41.     Sears states that "[t]he retail industry is highly competitive, with few barriers to entry."  (2008 Form 10-K, filed 3/17/09, at 7).  According to Sears, it "compete[s] with a wide variety of retailers, including other department stores, discounters, home improvement stores, consumer electronics dealers, auto service providers, specialty retailers, wholesale clubs, as well as many other retailers operating on a national, regional or local level along with Internet and catalog businesses, which handle similar lines of merchandise."  (*Id.*)

42.     AutoZone is a public company that has a combined capital, surplus and undivided profit exceeding $26,161,000.  AutoZone operates as a specialty retailer and distributor of automotive replacement parts and accessories.  AutoZone also offers a commercial sales program that provides commercial credit, and delivery of parts and other products to local, regional, and national repair garages, dealers, and service stations.  In addition, it sells the ALLDATA brand automotive diagnostic and repair information, auto and light truck parts, and accessories on the Web at *autozone.com.*  As of August 30, 2008, AutoZone operated 4,092 stores in the United States and Puerto Rico and 148 stores in Mexico.

43.     AutoZone was founded in 1979 and is based in Memphis, Tennessee.  For the year ended August 30, 2008, AutoZone reported net sales of $6.523 billion compared with $6.170 billion for the year ended August 25, 2007, a 5.7% increase from fiscal 2007.  (AutoZone 2008 Form 10-K, filed 10/27/08, at 17).  AutoZone reported net income for fiscal 2008 of $641.6 million.  (*Id.*)

44.     AutoZone sells a variety of auto parts and accessories, which are listed on its website, *www.autozone.com.*  Among these items are the following:  brakes and traction control, engine management, exhaust, exterior items, interior items, performance, power train, routine maintenance items, suspension and steering, tools, trim accessories, and truck accessories.

According to AutoZone, "[t]he sale of automotive parts, accessories and maintenance items is highly competitive. . . ."  (2008 Form 10-K, filed 10/27/08, at 11).  AutoZone states that: "Competitors include national, regional and local auto parts chains, independently owned parts stores, jobbers, repair shops, car washes and auto dealers, in addition to discount and mass merchandise stores, department stores, hardware stores, supermarkets, drugstores, convenience stores and home stores that sell aftermarket vehicle parts and supplies, chemicals, accessories, tools and maintenance parts." (*Id.*)

45. Sears and AutoZone both are engaged in commerce.  The two companies compete with one another in selling auto replacement parts, supplies, and accessories.

46. Defendant Crowley became a member of the AutoZone board on August 18, 2008.  AutoZone issued a press release announcing that Crowley had been added to the AutoZone board at the direction of ESL, AutoZone's largest shareholder.  (AutoZone 8/18/08 press release).  The August 18, 2008 AutoZone press release noted that Crowley has been a Sears director since March 2005, and has been President and Chief Operating Officer of ESL. Crowley also serves as a director of AutoNation, a public company 45% owned by ESL. (AutoNation, Schedule 14A, filed 3/23/09, at 29).

47. According to AutoNation's most recent annual report on SEC Form 10-K, AutoNation sells new and used cars, and its "stores also provide a wide range of vehicle maintenance, repair, paint, and collision repair services, including warranty work that can be performed only at franchised dealerships and customer-pay service work."  (AutoNation 2008 Form 10-K, filed 2/17/09 at 5).  AutoNation disclosed that it has 232 stores as of December 31, 2008.  *Id.* at 1.  According to AutoNation, its "parts and service and finance and insurance operations, while comprising approximately 21% of total revenue, contribute approximately 65%

of our gross margin." *Id.* at 23.   Crowley has been a member of the board of directors of AutoNation since January 2002. (AutoNation Form 10-K, filed 3/23/09, at 6). Crowley is on AutoNation's Compensation Committee and Corporate Governance and Nominating Committee. *Id.* at 9.

48.     AutoNation sells auto service and parts to its customers.   According to its website, a customer can search for auto parts and order them from AutoNation.   (*See* www.autonation.com, service & parts toolbar)).   AutoNation's website directs customers to 291 "Parts Centers."   These parts centers are participating car dealerships located throughout Florida, California, Texas, Washington, Nevada, Tennessee, Maryland, Georgia, Colorado, Ohio, Illinois, Virginia, Arizona, and Alabama.   The customer selects a car dealer, completes a "Parts Order Form" online, and submits the order to the participating car dealer.

49.     AutoNation also offers a "network" of "service and collision repair locations to make vehicle maintenance & repair simple and convenient." (*www.autonation.com*).   According to its website, AutoNation's auto dealer network offers:  "State-of-the-art facilities, diagnostic & repair equipment; factory trained and certified technicians; knowledgeable & friendly service personnel; competitively priced maintenance and repairs."  (*Id.*)  AutoNation tells customers: "To schedule a service appointment, simply click on the request link below to locate a dealer near you." (*Id.*)  Customers can then choose a participating car dealer online to service their car in the following states:  Washington, Florida, California, Texas, Arizona, Nevada, Tennessee, Maryland, Ohio, Virginia, Illinois, Alabama, Georgia, and Minnesota. (*www.autonation.com*).

50.     Sears has stores in all these states, including but not limited to full-line mall stores in the numbers indicated in parentheses, as follows:  California (80); Alabama (13); Florida (55); Colorado (13); Georgia (22); Minnesota (12); Nevada (4); Maryland (19); Tennessee (24);

Virginia (23); Texas (60); Washington (23).  (2008 Form 10-K, filed 3/17/09, at 11-12).  Sears'

2008 Form 10-K also details the number of Sears' other types of stores in these states, such as

Discount Stores, Super Centers, Sears Essentials/Grand Stores and Specialty Stores.  *Id.*

51.     Sears and AutoNation both are engaged in commerce.  The two companies

compete with one another in providing vehicle maintenance, auto parts, and vehicle repair.

52.     AutoNation has a combined capital surplus and undivided profit exceeding

$26,161,000.  AutoNation reported revenue for 2008 of $14.131 billion.  (AutoNation 2008

Form 10-K, filed 3/17/09, at 22).  AutoNation states that they "operate in a highly competitive

industry."  (*Id.* at 9).  In addition to competition from other auto retailers and dealers,

AutoNation states that it is "also subject to competition from independent automobile service

shops and service center chains."  (*Id.*).

**The Individual Defendants Violated Section 8 by
Nominating Reese and Crowley to the Sears Board
and Recommending that Shareholders Re-elect Them**

53.     According to Sears' proxy disclosures, the Board's Nominating and Corporate

Governance Committee evaluates a candidate's qualifications to sit as a Board member and

reviews all proposed nominees for the Board of Directors, including those proposed by

stockholders, in accord with Sears' charter and Corporate Governance Guidelines.  (2008

DEF14A at 9; 2009 DEF14A at 10-11).  According to Sears, the Nominating and Corporate

Governance Committee reviews a candidate's "qualifications and independence," and considers

"diversity, age, skills and experience in the context of the needs of the Board."  (2008 DEF14A

at 9; 2009 DEF14A at 11).

54.     Although the Nominating and Corporate Governance Committee "has the ability

to retain a third party to assist in the nomination process, the Company has not paid a fee to any

third party to identify or assist in identifying or evaluating potential nominees." (2008 DEF14A at 9; 2009 DEF14A at 10).

55.     The Nominating and Corporate Governance Committee recommends nominees for directors to the full Board. (2009 DEF14A at 10). Directors are nominated by the Sears Board of Directors, or by stockholders, provided the stockholders follow the nomination procedures in the Company's bylaws. (2008 DEF14A at 8-9; 2009 DEF14A at 10). The Board then recommends whether it believes shareholders should vote for the nominated slate of directors. (*See* 2009 DEF14A, Proxy Card).

56.     In 2008, Sears' Board of Directors consisted of the following eight members: Lampert, Crowley, Mnuchin, Perry, Rollins, Reese, Scott, and Tisch. (2008 DEF14A at 7).

57.     On or about March 17, 2009, Sears disseminated a proxy statement on Form DEF14A to its shareholders seeking their vote on the election of directors, among other things. The shareholder vote was to take place at the annual meeting of shareholders to be held on May 4, 2009. (2009 DEF14A, letter from W. Bruce Johnson to shareholders).

58.     Sears stated in the 2009 proxy that the Nominating and Corporate Governance Committee reviewed the qualifications and independence of these seven nominees, and approved them to the full Board of Directors. The full Board of Directors, in turn, approved the nomination of the seven directors for re-election to the Board in 2009. On March 12, 2009, defendant Perry advised the Sears Board that he would not stand for re-election to the full Board at the annual meeting on May 4, 2009 so that he could devote more time to his company, Perry Capital. (2009 DEF14A at 7). Perry, however, "indicated his intention to serve until the Annual Meeting." *Id.* In light of Perry's intention not to seek re-election, the Sears Board decided to "evaluate reducing the size of the Board from eight members to seven." *Id.*

59.     According to the 2009 DEF14A sent to shareholders, the then-current Board of Sears recommended that Sears shareholders vote in favor of the following seven nominees for director:  Crowley, Lampert, Mnuchin, Reese, Rollins, Scott, and Tisch.  (2009 DEF14A at 7-8 & Proxy Card).

60.     The seven nominees for re-election in 2009 to the Sears Board (Crowley, Lampert, Mnuchin, Reese, Rollins, Scott, and Tisch) were re-elected at the annual shareholder's meeting on May 4, 2009.

61.     Reese remains a director of Jones Apparel.

62.     Crowley remains a director of AutoZone and AutoNation.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

63.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress defendants' breaches of fiduciary duties.

64.     Plaintiffs own Sears common stock and have owned such stock since January 2008.

65.     Plaintiffs will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

66.     The Sears Board currently consists of seven directors: defendants Crowley, Lampert, Mnuchin, Reese, Rollins, Scott and Tisch.   Defendants Reese and Crowley are interested directors. Defendant Lampert is an interested director also. Moreover, with respect to Lampert, Crowley is his designee on the boards of AutoZone and AutoNation, given Lampert's large share-ownership of those companies through ESL. According to Sears, Lampert controls the power to elect directors to the Sears Board, by virtue of his 54% ownership of Sears. (2008

Form 10-K, filed 3/17/09, at 10).  Accordingly, pre-suit demand on the current Sears Board would be futile and is excused.

67.    Moreover, demand is also excused because a majority (seven out of eight) of the directors who committed the *ultra vires* acts complained of – nominating Reese and Crowley for Board re-election  and  recommending to shareholders that they vote for these directors' reelection in 2009 – are still members of the Sears Board of Directors. These seven directors are: Crowley, Lampert, Mnuchin, Reese, Rollins, Scott and Tisch. As a result, a majority of the current Sears Board is not independent with respect to evaluating the Board's violation of Section 8.  A pre-suit demand on the current Board is therefore excused.

## COUNT ONE: VIOLATION OF SECTION 8 OF THE CLAYTON ACT (REESE)

68.    Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

69.    Section 8 of the Clayton Act, 15 U.S.C. § 19, prohibits a person from serving, at the same time, as a director or officer of two or more corporations, other than banks, banking associations, and trust companies if: (1) the combined capital, surplus and undivided profits of each of the corporations exceeds $10,000,000 (or as of January 13, 2009, $26,161,000); (2) each corporation is engaged in commerce; and, (3) the corporations are competitors. Sears and Jones Apparel meet these statutory requirements and none of the exemptions from Section 8 apply here.

70.    Reese currently serves as a director of both Sears and Jones Apparel and is in violation of Section 8 because:

a)    Sears and Jones Apparel have each a combined capital, surplus and undivided profit exceeding $26,161,000.

b)    Sears and Jones Apparel corporations are each engaged in commerce.

c)      Sears and Jones Apparel are competitors, such that the elimination of competition by agreement between them would constitute a violation of any of the antitrust laws.

71.     Pursuant to 15 U.S.C. § 26, Reese should be enjoined from continuing to serve on the boards of both companies, namely Sears and Jones Apparel.

72.     The Court should also enjoin the Sears Board (as presently constituted and as it may be constituted in the future) from committing future violations of Section 8.

## COUNT TWO:  VIOLATION OF SECTION 8 OF THE CLAYTON ACT (CROWLEY)

73.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

74.     Section 8 of the Clayton Act, 15 U.S.C. § 19, prohibits a person from serving, at the same time, as a director or officer of two or more corporations, other than banks, banking associations, and trust companies if: (1) the combined capital, surplus and undivided profits of each of the corporations exceeds $10,000,000 (or as of January 13, 2009, $26,161,000); (2) each corporation is engaged in commerce; and, (3) the corporations are competitors.  Sears and Jones Apparel meet these statutory requirements and none of the exemptions from Section 8 apply here.

75.     Crowley currently serves as a director of Sears and AutoZone and AutoNation and is in violation of Section 8 because:

a)      Sears, AutoZone and AutoNation have each a combined capital, surplus and undivided profit exceeding $26,161,000.

b)      Sears, AutoZone and AutoNation are each engaged in commerce.

c)      Sears and AutoZone are competitors, and Sears and AutoNation are competitors, such that the elimination of competition by agreement between Sears and AutoZone or Sears and AutoNation would constitute a violation of any of the antitrust laws.

76.     Pursuant to 15 U.S.C. § 26, Crowley should be enjoined from continuing to serve on the board of Sears while he is still a member of the boards of AutoZone and AutoNation.

77.     The Court should also enjoin the Board of Sears (as presently constituted or as it may be constituted in the future) from committing future violations of Section 8.

## COUNT THREE:  BREACH OF FIDUCIARY DUTY

78.     Plaintiffs repeat and reallege the foregoing allegations as if fully set forth herein.

79.     As alleged herein, each of the Individual Defendants had a fiduciary duty to, among other things, exercise good faith to ensure that Sears was operated in a diligent, honest and prudent manner and complied with all applicable federal laws.

80.     The Individual Defendants knowingly or recklessly violated Section 8 when they nominated Reese and Crowley for re-election to the Sears Board and recommended that shareholders vote in favor of their re-election. In doing so, the Individual Defendants breached their fiduciary duties under Delaware law owed to Sears and its shareholders, namely, the duties of due care, good faith, candor, and loyalty.

81.     Furthermore, despite their actual knowledge of the Company's improper business practices, the Individual Defendants have made no effort to correct the problems; thus, they abdicated their fiduciary duty of good faith.

82.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, they have violated and caused the Company to violate, Section 8.  The Sears Board should be enjoined from violating Section 8. The Court should issue an injunction requiring the Sears Board to remove Reese and Crowley from the Sears Board, or to otherwise cure the present violation of Section 8. The Court should also issue an injunction barring the Sears Board (as presently constituted and as it may be constituted in the future) from all future

violations of Section 8.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand:

A.      That the Sears Board (as presently constituted or as it may be constituted in the future) be preliminarily and permanently enjoined such that the Board is directed to remove the subject interlocks or otherwise cure the violation by requiring Reese to resign from her directorship on the Board of Jones Apparel or Sears, and Crowley from the Boards of AutoZone and AutoNation, or Sears.

B.      That the defendants be preliminarily and permanently enjoined from future violations of Section 8 and that the Sears Board be ordered to establish a procedure whereby future elections and appointments of officers and directors in violation of Section 8 are identified and restricted.

C.      That the Court award Plaintiffs the cost of this suit, including reasonable attorneys' fees as authorized under 15 U.S.C. § 26 and the common law, and

D.      That the Court order such other and further relief as may appear necessary and appropriate.

Dated: October 13, 2009

*/s/ Matthew T. Hurst*
**SUSMAN HEFFNER & HURST LLP**
Matthew T. Hurst
Two First National Plaza
Suite 600
Chicago, Illinois 60603
T: 312-346-3466
F: 312-346-2829

***Liaison Counsel for Plaintiffs***

**SARRAF GENTILE LLP**
Ronen Sarraf
Joseph Gentile
116 John Street, Suite 2310
New York, New York 10038
T: 212-868-3610
F: 212-918-7967

**VIANALE & VIANALE LLP**
Kenneth J. Vianale
2499 Glades Road, Suite 112
Boca Raton, Florida 33431
T: 561-392-4750
F: 561-392-4775

***Lead Counsel for Plaintiffs***