# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT F. BOOTH TRUST, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT, and THOMAS J. TISCH, | ) ) ) ) ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| SEARS HOLDINGS CORPORATION, | ) |
| | ) |
| Nominal Defendant. | ) ) |

No. 1:09-cv-05314

Hon. Ronald A. Guzman

## MEMORANDUM IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(6) and 23.1(b)(3)

*Of Counsel*:

Paul Vizcarrondo, Jr.
Jonathon R. La Chapelle
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York  10019

*Attorneys for the Individual Defendants*

Christopher Q. King (#06189835)
David R. Geerdes (#6289557)
SONNENSCHEIN, NATH & ROSENTHAL LLP
233 South Wacker Drive
8000 Sears Tower
Chicago, Illinois  60606

Defendants William C. Crowley, Edward S. Lampert, Steven T. Mnuchin, Richard C. Perry, Ann N. Reese, Kevin B. Rollins, Emily Scott, and Thomas J. Tisch (the "Individual Defendants") respectfully submit this memorandum in support of their motion to dismiss the Amended Consolidated Verified Derivative Complaint (the "Complaint") in its entirety for failure to make a pre-suit demand on the board of directors (the "Board") of Sears Holdings Corporation ("Sears"). This motion is made pursuant to Rules 12(b)(6) and 23.1(b)(3) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Two Sears stockholders have filed this consolidated derivative action challenging the actions of Sears' Board in connection with the nomination and election of two of Sears' directors, Ann N. Reese and William C. Crowley. The Complaint alleges that Reese and Crowley are "interlocking" directors within the meaning of Section 8 of the Clayton Act by virtue of their service as directors of other companies supposedly in competition with Sears. The plaintiffs concededly did not first make a demand upon Sears' Board before bringing this derivative action. Under Rule 23.1 of the Federal Rules of Civil Procedure, however, a shareholder seeking to assert a derivative claim without first having made a demand is required to state *with particularity* the reasons for not making such a demand. By its nature, a derivative suit impinges on the managerial authority of directors, and plaintiffs may not excuse demand merely by making generalized allegations. Instead, a plaintiff seeking to excuse demand must allege specific, particularized facts that create a reasonable doubt that the board of directors could properly exercise its independent and disinterested business judgment in evaluating the claim and deciding whether to bring suit. Plaintiffs here have failed to make such a showing and, accordingly, the Complaint must be dismissed.

Where, as here, the derivative claim challenges an identifiable decision of the board of directors of a Delaware corporation, the two-part test of *Aronson v. Lewis* applies. Under *Aronson*, demand is only excused where plaintiffs allege particularized facts sufficient to create a reasonable doubt that "(1) the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d 805, 814 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Under the first prong of this test, plaintiffs seeking to challenge corporate directors' independence must show that a *majority* of the board received personal financial benefits from the complained-of activity or was beholden to a director who did. Plaintiffs here have not pled a single fact even suggesting that such a personal benefit accrued to *any* of Sears' directors — let alone a majority of the Board. And despite plaintiffs' claim to the contrary (*see* Compl. ¶ 67), the mere fact that the defendants participated in the acts complained of does not excuse demand; otherwise, demand would *ipso facto* be excused in every case where the directors are named as defendants — and that plainly is not the law.

Plaintiffs likewise have not pled particularized facts sufficient to excuse demand under *Aronson*'s second prong — which requires that the plaintiff allege specific facts showing that the challenged decision was not a valid exercise of the Board's business judgment. To overcome the presumption under Delaware law that Sears' directors acted in the best interests of the corporation, plaintiffs must plead particularized facts sufficient to raise a reasonable doubt that the Board's actions were taken in good faith and on an informed basis. But plaintiffs have not alleged — even conclusorily — that Sears' Board was uninformed. Similarly, the Complaint alleges no facts that would even suggest that Sears' Board acted in bad faith. Under Delaware law, a showing of "bad faith" almost uniformly requires a showing that a defendant has acted intentionally in violation of the law or contrary to the best interests of the corporation. But here,

plaintiffs have pled no *specific facts* that would demonstrate unlawful or improper intent on the part of any defendant; instead, the Complaint contains but two conclusory paragraphs alleging without support that the Board "knowingly or recklessly violated Section 8" of the Clayton Act. *See* Compl. ¶¶ 80-81. It is beyond dispute, however, that this Court need not credit such "[t]hreadbare recitals . . . supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Moreover, Sears' Certificate of Incorporation expressly exculpates directors from liability for actions taken in their official capacity to the fullest extent permitted by Delaware law, and courts routinely dismiss derivative actions for want of a demand when the subject corporation has exculpated its directors in such manner.

For the foregoing reasons, and as set forth more fully below, the Complaint must be dismissed, as it plainly fails to allege any facts at all — much less with particularity — that would show that a majority of the Sears Board is interested or that the challenged transaction was not the product of a valid exercise of business judgment.

## SUMMARY OF RELEVANT ALLEGATIONS

### A. The Parties

The plaintiffs, as Sears stockholders, bring this derivative action nominally against Sears and against the Individual Defendants, as members of the Sears Board.

### B. The Substantive Allegations

Plaintiffs allege that Reese and Crowley are "interlocking" directors within the meaning of Section 8 of the Clayton Act, 15 U.S.C. § 19. Compl. ¶ 2. In addition to serving on the Sears Board, Reese is also a member of the board of directors of Jones Apparel Group, Inc. ("Jones Apparel"), and Crowley is a member of the boards of directors of AutoZone, Inc. ("AutoZone") and AutoNation, Inc. ("AutoNation"). Compl. ¶ 2. Plaintiffs allege that Sears competes with (i) Jones Apparel "in the area of women's clothing and accessories, men's clothing, and women's

and children's shoes," (ii) AutoZone "in the area of automotive replacement parts and accessories," and (iii) AutoNation "in the area of auto service and repair." Compl. ¶ 2.*  Plaintiffs' primary theory is that the Individual Defendants improperly nominated Reese and Crowley for re-election to the Sears Board and recommended to shareholders that they vote for Reese's and Crowley's re-election. *E.g.*, Compl. ¶ 67. Counts I and II purport to state a claim for violation of Section 8 of the Clayton Act as to Reese and Crowley, respectively, and Count III purports to state a claim for breach of fiduciary duty based upon the same conduct alleged in Counts I and II. The Complaint does not allege that the defendants are liable for damages for the alleged violations; rather, it only seeks injunctive relief.

      C.      <u>The Demand-Futility Allegations</u>

The Complaint devotes but three conclusory paragraphs to the issue of demand futility: Paragraph 66 alleges that defendants Reese, Crowley, and Lampert are interested directors; paragraph 67 alleges that demand is excused because a majority of the directors participated in the acts complained of; and paragraph 4 summarizes the contents of paragraphs 66 and 67.

**ARGUMENT**

**PLAINTIFFS' ALLEGATIONS ARE INADEQUATE TO ESTABLISH DEMAND FUTILITY**

      A.      <u>The Governing Demand-Futility Framework</u>

Sears is a Delaware corporation. Compl. ¶ 6. "A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation." *Aronson*, 473 A.2d at 811 (citing 8 Del. Code § 141(a)).

---

\*      Plaintiffs' allegations that Sears competes with Jones Apparel, AutoZone and AutoNation in the broad product categories set forth in the Complaint are — like plaintiffs' other allegations — conclusory and without factual support. To determine whether corporations are competitors for purposes of Section 8 of the Clayton Act, a court may apply the "relevant market test," which focuses on whether the corporations "(1) sell products which are physically or functionally *identical* (*i.e.*, reasonably interchangeable) (2) within the same geographic area." *American Bakeries Co. v. Gourmet Bakers, Inc.*, 515 F. Supp. 977, 980 (D. Md. 1981) (emphasis added).

The right to manage the business and affairs of the corporation includes the right to decide whether to "bring a law suit or to refrain from litigating a claim on behalf of a corporation." *Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990); *see also Daily Income Fund v. Fox*, 464 U.S. 523, 530 (1984) ("[T]he decision to initiate litigation [] should be made by the board of directors[.]").

Derivative actions in federal court are subject to Rule 23.1 of the Federal Rules of Civil Procedure, which provides that a derivative plaintiff must either make a pre-suit demand upon the board of directors or "state with particularity . . . the reasons for not" making such a demand. Fed. R. Civ. P. 23.1(b)(3). Whether demand is excused is governed by the law of the state of incorporation — here, Delaware. *Kamen v. Kemper Fin.*, 500 U.S. 90, 108-09 (1991); *accord Starrels v. First Nat'l Bank*, 870 F.2d 1168, 1170 (7th Cir. 1989). This is true not only for derivative claims arising under state law (such as plaintiffs' claim for breach of fiduciary duty) but also for claims arising under federal law (such as plaintiffs' antitrust claims), unless the state's demand-futility law would undermine federal policy. *See Kamen*, 500 U.S. at 108-09 (state demand-futility law applied to derivative action arising under the federal securities laws).

Because a derivative suit "'by its very nature . . . impinges on the managerial freedom of directors,'" *Stone v. Ritter*, 911 A.2d 362, 366 (Del. 2006), derivative plaintiffs may not circumvent the demand requirement merely by making generalized factual allegations or allegations against the directors *en masse*. Rather, derivative plaintiffs "must comply with stringent requirements of factual particularity," *Brehm*, 746 A.2d at 254, and must show, "*director-by-director*," that a *majority* of the board is disabled from considering a demand. *See Postorivo v. AG Paintball Holdings*, 2008 WL 553205, at *7 (Del. Ch. 2008) (emphasis added). These "strict requirements of factual particularity . . . 'exist[] to preserve the primacy of board

decisionmaking regarding legal claims belonging to the corporation.'" *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009).

  B. <u>Plaintiffs Fail To Plead Particularized Facts To Meet the *Aronson* Test.</u>

  The principal conduct challenged by the Complaint is the Board's nomination of Reese and Crowley for re-election, as well as the Board's recommendation that Sears stockholders vote to re-elect those two directors. Compl. ¶ 3. Because these allegations challenge identifiable decisions made by the Sears Board, *Aronson* governs.[*] *See*, *e.g.*, *Starrels*, 870 F.2d at 1171 (Seventh Circuit applying the *Aronson* test to determine demand futility in a case involving a Delaware corporation). In *Aronson*, the Delaware Supreme Court held that demand is not excused unless a plaintiff alleges particularized facts sufficient to create a reasonable doubt that "(1) the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment." 473 A.2d at 814. Plaintiffs here have failed to make either showing.

  1. <u>The Board Is Disinterested and Independent.</u>

  As a matter of Delaware law, a corporation's board of directors is presumed to be disinterested and independent. *See*, *e.g.*, *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at *3 (Del. Ch. 2009). Thus, in order to excuse demand under the first prong of the *Aronson* test, it is plaintiffs' burden to allege particularized facts, "director-by-director," that create a reasonable doubt that a majority of the directors are disinterested and independent. *See Postorivo*, 2008 WL 553205, at *7. Such facts must show that a majority of the directors derived a "personal

---

[*] Where, by contrast, a derivative claim seeks to hold the directors liable for actions *not* taken, the one-part test of *Rales v. Blasband* applies. Under *Rales*, a plaintiff must "create a reasonable doubt that . . . the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." 634 A.2d 927, 934 (Del. 1993). Plaintiffs appear to agree that *Aronson* governs the demand-futility analysis here. *See* Joint Initial Status Report at 4. Although the *Aronson* and *Rales* tests might appear different at first blush, they ultimately "point[] . . . toward a similar analysis." *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003).

financial benefit" from the challenged action or were dominated by someone who did. *Aronson*, 473 A.2d at 812. A "personal financial benefit" is a benefit accruing uniquely to a director, "as opposed to a benefit which devolves upon the corporation or all stockholders generally." *Id.* The Complaint fails to allege any facts, particularized or otherwise, showing a personal financial benefit accruing to any of the directors, let alone a majority of them.

First, plaintiffs allege that Mr. Lampert is an interested director by virtue of his majority ownership of Sears. *See* Compl. ¶ 66. But majority ownership, without more, does not make a director interested in a transaction for purposes of demand futility. *See, e.g., Kanter v. Barella*, 489 F.3d 170, 178 (3d Cir. 2007) (citing *McGowan v. Ferro*, 859 A.2d 1012, 1029 (Del. Ch. 2004)). If anything, Lampert's significant stake in Sears suggests that his "interests were aligned with those of other stockholders." *Id.* Not a single fact alleged in the Complaint would even suggest that Lampert stood to profit personally from the challenged actions in any way other than in his capacity as a Sears stockholder. *See, e.g., In re E.F. Hutton Banking Practices Litig.*, 634 F. Supp. 265, 271 (S.D.N.Y. 1986) ("Demand is *not* excused where the directors profit only because of the general profitability of the Corporation.") (citing *Aronson*, 473 A.2d at 812).

*Brehm v. Eisner* is instructive. In *Brehm*, the plaintiffs challenged a corporate board's approval of a compensation package for an executive who was a longtime friend of the board's chairman. 746 A.2d at 249. The plaintiffs alleged that demand was excused because the chairman was supposedly interested in the transaction and a majority of the board was allegedly "beholden" to the chairman. *Id.* at 257. The Delaware Supreme Court rejected plaintiffs' allegations, holding that there could be no reasonable doubt as to the chairman's disinterestedness — based in part on a finding that his ownership of a substantial number of company options meant that his interests were substantially aligned with the company's other stockholders. *See id.* Similarly, plaintiffs here have not pled any facts that would generate a

- 7 -

"reasonable inference" that Lampert "would benefit *personally*" from Crowley's and Reese's service on Sears' Board. *Id.* at 257-58 (emphasis added). Accordingly, plaintiffs have failed to rebut the presumption that Lampert is disinterested. *See also Fener v. Gallagher*, 2005 WL 2234656, at *5 (N.D. Ill. 2005) (applying *Aronson* test, rejecting "conclusory allegations" that certain directors were "beholden" to others based on "current or past business and personal and employment relationships," and dismissing derivative complaint for failure to make a demand).

The Complaint also challenges the independence of Reese and Crowley themselves, alleging simply that they "are interested directors." Compl. ¶ 66. But again, plaintiffs fail to plead any facts showing a disabling personal financial benefit accruing to either of them. If plaintiffs' theory is that Reese and Crowley obtained their directorships by virtue of the challenged actions — and that such directorships constitute a "personal financial benefit" — this theory has been squarely rejected by the Delaware courts. It is well settled that allegations that "directors are paid for their services as directors . . ., without more, do not establish any financial interest." *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other grounds by Brehm*, 746 A.2d 244; *accord, e.g.*, *King v. Baldino*, 2009 WL 2750470, at *7 (D. Del. 2009).

But even if Lampert, Crowley and Reese were interested directors (and plaintiffs have alleged no particularized facts to suggest they are), there are still four *other* directors — a majority of Sears' Board — who are indisputably independent: Mnuchin, Rollins, Scott and Tisch.* Plaintiffs do not even attempt to make a showing "director-by-director," *Postorivo*, 2008 WL 553205, at *7, that any of these four directors is somehow interested in the transaction. Plaintiffs merely claim that demand would be futile because "Lampert controls the power to elect directors to the Sears Board, by virtue of his 54% ownership of Sears" (Compl. ¶ 66), but this

---

\* The Complaint alleges that the Sears Board currently consists of seven members; the eighth director-defendant, Richard C. Perry, no longer serves on the Board. *See* Compl. ¶¶ 10, 66.

fact alone does not suffice to excuse demand. "[I]n the demand context even proof of majority ownership of a company does not strip the directors of the presumptions of independence, and that their acts have been taken in good faith and in the best interests of the corporation. There must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person." *Aronson*, 473 A.2d at 815. "[I]t is not enough to charge that a director was nominated by or elected at the behest of those controlling the outcome of a corporate election." *Id.* at 816.* "The short-hand shibboleth of 'dominated and controlled directors' is insufficient." *Id.* Time and again, courts have refused to countenance such naked allegations of control. *See*, *e.g.*, *id.*; *In re Affiliated Computer Svcs., Inc. S'holders Litig.*, 2009 WL 296078, at *9 (Del. Ch. 2009) ("mere allegation that a director is dominated and controlled does not raise a reasonable doubt as to his or her independence"); *King*, 2009 WL 2750470, at *7 & n.45.

Finally, plaintiffs allege that a majority of the Board lacks the requisite independence because they participated in the acts complained of. Compl. ¶ 67. But this theory has also been repeatedly rejected as a basis for excusing demand. "[I]t is well-settled that an allegation that directors approved and participated in a challenged transaction will not, in and of itself, establish demand futility." *Caruana v. Saligman*, 1990 WL 212304, at *4 (Del. Ch. 1990). "Mere directorial approval of a transaction is insufficient to show interestedness on the part of directors." *Id.*; *see also*, *e.g.*, *Grobow v. Perot*, 526 A.2d 914, 924 (Del. Ch. 1987); *Kamen v. Kemper Fin.*, 939 F.2d 458, 461 (7th Cir. 1991) ("Delaware . . . has emphatically rejected the proposition that an investor may forego demand whenever the directors participated in the transaction they challenge."). This principle is particularly compelling here, where it is not

---

\* This authority likewise disposes of plaintiffs' contention that Crowley is somehow interested because he is Lampert's "designee" on the boards of AutoZone and AutoNation. *See* Compl. ¶ 66.

alleged that the directors who would consider the demand would be liable for damages if the violations alleged were proven.

Because plaintiffs have failed to plead particularized facts that would raise a reasonable doubt as to the independence of a majority of Sears' Board, the Complaint does not allege a sufficient basis for demand excusal under *Aronson*'s first prong.  *See*, *e.g.*, *Grobow*, 539 A.2d at 189 (Del. 1988); *Hale v. China Online, Inc.*, 2009 WL 2601357, at *4 (N.D. Ill. 2009) (holding that a "mere conclusion" that provided "no framework in which to analyze the directors' alleged independence or disinterestedness" was "a patently inadequate allegation of demand excusal").

### 2. Plaintiffs Fail To Plead Particularized Facts Sufficient To Rebut the Presumption of Validity Established by the Business Judgment Rule.

Because a majority of the board is disinterested and plaintiffs have not sufficiently alleged otherwise, the only remaining question is whether, under *Aronson*'s second prong, plaintiffs have pled particularized facts sufficient to create a reasonable doubt as to whether the action complained of was a valid exercise of the directors' business judgment.  To satisfy *Aronson*'s second prong, a complaint must allege particularized facts sufficient to demonstrate a "*substantial likelihood* of director liability."  *Aronson*, 473 A.2d at 815 (emphasis added).  The "mere threat of personal liability" does not suffice.  *Id.*  This is a "substantial burden, as the second prong . . . is 'directed to extreme cases in which despite the appearance of independence and disinterest a decision is *so extreme or curious* as to itself raise a legitimate ground to justify further inquiry and judicial review.'"  *Greenwald v. Batterson*, 1999 WL 596276, at *7 (Del. Ch. 1999) (emphasis added).  Plaintiffs here have utterly failed to plead particularized facts sufficient to meet this "high standard."  *See Postorivo*, 2008 WL 553205, at *8.

The business judgment rule is a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."  *Aronson*, 473 A.2d at 812.  The

presumption honors the managerial prerogatives of Delaware directors under Section 141(a) of the General Corporation Law. *Id.* To overcome the presumption of the business judgment rule for purposes of excusing demand, "'plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.'" *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 824 (Del. Ch. 2005). In the absence of such well-pled allegations, "the business decisions [of a board] are not subject to challenge because in hindsight other choices might have been made instead." *Affiliated Computer Svcs.*, 2009 WL 296078, at *10; *see also In re JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794, at *12 (N.D. Ill. 2007) (dismissing derivative claim for failure to make a demand where plaintiffs' allegations "failed to call into question the Directors' good faith, honesty or lack of adequate information").

Nowhere in the Complaint do plaintiffs plead — even conclusorily — that the Sears Board was not adequately informed about the qualifications of Crowley or Reese. Quite to the contrary, the Complaint recites that, among other things, the Board's "Nominating and Corporate Governance Committee evaluates a candidate's qualifications to sit as a Board member and reviews all proposed nominees for the Board of Directors, including those proposed by stockholders, in accord with Sears' charter and Corporate Governance Guidelines." Compl. ¶ 53. The Complaint does not suggest that the directors did not adhere to this process when the Board nominated Reese and Crowley and recommended that Sears shareholders vote to re-elect those directors to the Board.

The Complaint likewise does not allege facts to suggest that any of the defendants acted in bad faith. The Delaware Supreme Court has articulated the three "most salient" examples of bad faith as follows:

> A failure to act in good faith may be shown, for instance, where the fiduciary *intentionally* acts with a purpose other than that of

> advancing the best interests of the corporation, where the fiduciary acts with the *intent* to violate applicable positive law, or where the fiduciary *intentionally* fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.

*In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) (emphasis added). Notably, each of these examples includes a requirement that the fiduciary has acted *intentionally*, and nowhere in the Complaint do plaintiffs set forth any particularized facts that would demonstrate that any defendant — let alone a majority of the Board — acted intentionally for an improper purpose. Read most favorably to plaintiffs, the theory of the Complaint appears to be that demand is excused because the acts complained of were *ultra vires*. *See* Compl. ¶ 67.

Of course, the concept of an *ultra vires* action is largely outmoded and has been narrowly circumscribed by Delaware statutory law. *See* 8 Del. Code § 124. Generally, *ultra vires* in its broadest form "refers to any act which is in excess of those powers explicitly authorized — even those acts not prohibited." *Solomon v. Armstrong*, 747 A.2d 1098, 1114 n.45 (Del. Ch. 1999). Plaintiffs do not (and could not), however, allege that the defendants acted beyond the scope of the company's charter by nominating individuals to the Board and recommending that shareholders vote for them — yet that is precisely the conduct alleged to be a breach of the directors' fiduciary duties.* But even assuming that the acts complained of were *ultra vires* or unlawful, there are no facts in the Complaint that would show that any defendant *knowingly* and *intentionally* engaged in *ultra vires* conduct or that any defendant *knowingly* and *intentionally* caused the corporation to violate the law. *See*, *e.g.*, *Melzer v. CNET Networks*, 934 A.2d 912, 914-15 (Del. Ch. 2007) (director must "knowingly" violate the company's charter for *ultra vires* action to be a basis on which to excuse demand). Although plaintiffs claim in a single paragraph the conclusion that the Individual Defendants "knowingly or recklessly violated Section 8"

---

\* In fact, the Complaint expressly *acknowledges* that Sears' corporate charter provides for the nomination of directors. *See* Compl. ¶ 53.

(Compl. ¶ 80), the Complaint alleges no facts to support this conclusion. *See*, *e.g.*, *King*, 2009 WL 2750470, at *10 (refusing to credit conclusory statement that defendants "intentionally breached and/or recklessly and/or with gross negligence disregarded their fiduciary duties"). The Federal Rules, of course, "do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft*, 129 S. Ct. at 1954 (refusing to countenance unsupported conclusory statement as to defendants' intent).

At best, then, plaintiffs are left with a theory of gross negligence, which under Delaware law is the "functional equivalent" of criminal negligence. *Jardel Co. v. Hughes*, 523 A.2d 518, 530 (Del. 1987); *see also* 11 Del. Code § 231 (defining criminal negligence to involve "a *gross deviation* from the standard of conduct that a reasonable person would observe") (emphasis added). Delaware cases have described what constitutes gross negligence in the business judgment context, using such terms as "fraud or gross overreaching" and "gross and palpable overreaching." *Aronson*, 473 A.2d at 812 & n.6 (citing cases). Plaintiffs here certainly have not alleged particularized facts that would show that any defendant engaged in grossly negligent conduct — regardless of which definition is used. In any event, gross negligence, without more, is not bad faith, so even if plaintiffs *had* pled facts that would show gross negligence, that would not be enough to excuse demand. *See Walt Disney*, 906 A.2d at 64-65.

Plaintiffs' Complaint does not — and could not — seek damages from the director defendants. However, even if plaintiffs were able to plead a basis for damages, Sears' Certificate of Incorporation (at Article VII(A), (F))\* expressly exculpates directors for monetary liability to the fullest extent permitted by Delaware law, and Section 102(b)(7) of the Delaware Code permits such exculpation unless plaintiffs can plead particularized facts establishing "bad faith."

---

\*    Sears' Certificate of Incorporation is attached as Exhibit A to the Individual Defendants' Motion To Dismiss.

*See In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995) (refusing to excuse demand because plaintiffs had not pled particularized facts supporting an inference of "bad faith" to allow the court to find a "substantial likelihood that [the directors'] conduct falls outside the [exculpation] exemption").[*] Thus, "[w]here, as here, directors are exculpated from liability except for claims based on 'fraudulent,' 'illegal' or 'bad faith' conduct, a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008); *accord In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009) (in derivative suit alleging violations of antitrust laws, demand not excused where plaintiffs failed to plead particularized facts showing scienter as to a majority of the board). But the Complaint here "does not plead with particularity" — or at all — "the *specific conduct* in which *each* defendant 'knowingly' engaged, or that the defendants knew that such conduct was illegal." *Wood*, 953 A.2d at 142 (emphasis added). Even if this Court were to accept plaintiffs' naked conclusory allegation that the defendants had "actual knowledge" of the relevant facts (*see* Compl. ¶ 81), this alone would not bring the defendants' conduct outside the scope of Sears' exculpation provision. *See*, *e.g.*, *Frank v. Arnelle*, 1998 WL 668649, at *10 (Del. Ch. 1998) ("awareness of the facts constituting a breach of fiduciary duty" does not constitute a "knowing violation of the law" sufficient to bring the defendant's acts within an exception to Delaware's statutory exculpation provision).

Because the Complaint pleads no facts that would suggest that *any* defendant (let alone a majority of the Board) *knowingly* caused Sears to violate any law, plaintiffs cannot demonstrate a

---

[*] Delaware courts consider and apply exculpation provisions as a matter of course, including on a motion to dismiss. *See*, *e.g.*, *Baxter*, 654 A.2d at 1270. The federal courts, applying Federal Rule of Evidence 201(b), follow the same approach. *See*, *e.g.*, *Bronstein v. Austin*, 2008 WL 4735230, at *4 n.3 (N.D. Ill. 2008); *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 171 (D. Del. 2009).

"*substantial likelihood* of director liability." *Aronson*, 473 A.2d at 815 (emphasis added); *see also Wood*, 953 A.2d at 142; *Baxter*, 654 A.2d at 1270 (demand not excused where complaint did not "claim bad faith, intentional misconduct, knowing violation of law, or any other conduct for which the directors may be liable"). Plaintiffs thus have not alleged particularized facts sufficient to meet either prong of the *Aronson* test; accordingly, demand is not excused, and the Complaint fails as a matter of law.

\* \* \*

Plaintiffs concede that Sears has not been damaged by the purported violations, and they only seek an injunction requiring the Board to cure these alleged violations. There is no basis — and certainly none alleged — to suppose that the Board, if presented with the demand required by Delaware law before the filing of this lawsuit, could not and would not properly consider it and take whatever action it decided in its business judgment to be appropriate.

## CONCLUSION

For the foregoing reasons, plaintiffs have failed to demonstrate any excuse for their failure to make a demand on the Sears Board, and accordingly the Complaint must be dismissed with prejudice.

Dated: November 20, 2009

*Of Counsel*:

Paul Vizcarrondo, Jr.
Jonathon R. La Chapelle
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Tel: (212) 403-1000
Fax: (212) 403-2000

Respectfully submitted,

/s/ Christopher Q. King
Christopher Q. King (#06189835)
David R. Geerdes (#6289557)
SONNENSCHEIN, NATH & ROSENTHAL LLP
233 South Wacker Drive
8000 Sears Tower
Chicago, Illinois 60606
Tel: (312) 876-8000
Fax: (312) 876-7934

*Attorneys for the Individual Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 20, 2009 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to registered parties.

    /s/ David R. Geerdes