**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDINGS CORPORATION, | ) ) ) )   No. 1:09-cv-05314 |
| Plaintiff, | )   Hon. Ronald A. Guzmán |
| | ) |
| v. | ) ) |
| WILLIAM C. CROWLEY, EDWARD S. LAMPERT, STEVEN T. MNUCHIN, RICHARD C. PERRY, ANN N. REESE, KEVIN B. ROLLINS, EMILY SCOTT, and THOMAS J. TISCH, | ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| SEARS HOLDINGS CORPORATION, | ) ) |
| Nominal Defendant. | ) ) |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT AMENDED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Plaintiffs Robert F. Booth Trust and Ronald Gross, pursuant to Federal Rule of Civil Procedure 23.1, respectfully submit this memorandum of law in support of the parties' joint amended motion for preliminary approval of their proposed settlement, the terms of which are set out in the Amended Stipulation of Settlement, filed along with this memorandum.  Plaintiffs respectfully ask the Court to enter an Order that:  (1) preliminarily approves the Settlement as fair, reasonable and adequate; (2) directs the issuance of the summary and long-form notices of the settlement; and (3) schedules a final approval hearing on the settlement.

## I.   PRELIMINARY STATEMENT

The parties reached a proposed settlement that provides valuable relief to Sears and to

shareholders.  Notice of the settlement will be sent to shareholders by direct mail and through the internet, in easy-to-understand language that tells them about this lawsuit, about the terms of the settlement, and about their rights.

Plaintiffs respectfully request that the Court preliminarily approve the settlement because it is well "within the range of possible approval." *See Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 863 (7th Cir. 1998). Plaintiffs brought this derivative suit under Section 8 of the Clayton Act to address the continued service on Sears' Board of two allegedly "interlocking directors," William C. Crowley ("Crowley") and Ann N. Reese ("Reese"). The settlement addresses these concerns and provides an excellent result for Sears and its shareholders:

*First*, the settlement achieves complete relief with respect to Crowley. He will not stand for re-election as a director and will step down from his position as an officer of Sears.  Plaintiffs therefore believe that the settlement merits preliminary approval even if this were the settlement's only term.

*Second,* Reese will stay on the Sears board, but will not take part in board discussions on the operation of Sears' women's apparel or footwear business, except as necessary to fulfill her fiduciary duties as a director and member of the audit committee, and will not vote on such matters. This remedy achieves the prophylactic purposes of Section 8, namely, preventing violations of the antitrust laws. The "firewall" by which Reese will abide will prevent her from participating in the kinds of anticompetitive conduct (like discussions about price-fixing, attempts to monopolize, etc.) that Section 8 seeks to prevent. Sears' businesses are sufficiently separate and independent to make this firewall both workable and effective.

*Third*, the settlement achieves what the litigation by itself could not: Sears will add

another director to its board at or before its 2011 election of directors who must be unaffiliated with the controlling shareholder, ESL Investments, Inc.  The lawsuit by itself could not have achieved this result. Sears' addition of an independent director to its board (which currently has seven members) will further reduce the possibility of collusive or anticompetitive conduct of the type Section 8 aims to forestall.

*Fourth*, the settlement also achieves important relief not sued for in the amended complaint.  Sears' Chairman, Edward S. Lampert ("Lampert"), will be subject to a firewall of the same kind as Reese. This will preclude Lampert from taking part in discussions about the operation of Sears' auto parts and auto service businesses, except as necessary to fulfill his fiduciary duties as a director, and he will not vote on such matters. This relief furthers Section 8's objectives and reduces Sears' ability to engage in anticompetitive conduct with regard to these two businesses.

The settlement provides immediate benefits to Sears and its shareholders without the risks and uncertainties of continued litigation. The director defendants asserted a "de minimus" defense to this action.  *See* Answer at pp. 2-3 & 23, DE 75.   Section 8's safe harbor provision makes the statute inapplicable when the competitive sales of either of the two interlocking companies at issue is less than 2% of its total sales in the last completed fiscal year. *See* 15 U.S.C. § 19(a)(2)(B). The director defendants claim that the competitive sales of Sears' women's apparel and footwear business, and those of its auto parts and auto service businesses, are below the 2% statutory threshold. Litigation of these *de minimus* defenses would have been complex, costly, and time consuming:  *complex*, because since Section 8's enactment, Courts have only applied it in a handful of decisions; *costly*, because experts would likely be called in by both sides to testify; and *time consuming*, because the defenses would require full-blown merits

3

discovery, followed by summary judgment, trial, and in all likelihood, an appeal.

As discussed below, plaintiffs faced the real possibility that they could have lost on the merits and achieved nothing with this action. The settlement provides immediate benefits to Sears and its shareholders and achieves most of the lawsuit's objectives, either directly, in the case of Crowley's departure from the board, or indirectly, through the firewalls that address Section 8's underlying concerns in a concrete way and the addition of an independent director.

The proposed settlement is fair, reasonable and adequate, and was reached only after a lengthy factual investigation and extensive arms'-length negotiations. It benefits Sears, is in the shareholders' best interest, *see United Founders Life Ins. Co. v. Consumers National Life Ins. Co.,* 447 F.2d 647, 655 (7th Cir. 1971), and should be preliminarily approved.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The first of two shareholder derivative actions in this litigation, *Robert Booth Trust,* was filed on August 28, 2009.  [DE #1].  It alleged that the directors of Sears violated Section 8 of the Clayton Act and their common law fiduciary duties by nominating Reese and Crowley in 2009 for re-election to the Sears board.  The initial complaint alleged that Reese and Crowley were "interlocking directors" in violation of Section 8 because they sat on the boards of other companies that sold products and services in competition with Sears.  The initial complaint sought injunctive relief directing Sears to remove Reese and Crowley from the board.

A second derivative action, *Ronald Gross,* was filed on September 14, 2009, and on September 28, 2009, the Court consolidated the actions under the case number 09-C-5314 and appointed lead counsel.  [DE 38].  Plaintiffs filed an Amended Consolidated Verified Derivative Complaint (the "Amended Complaint") on October 13, 2009.  [DE 45].  The Individual Defendants and Sears moved to dismiss the Amended Complaint on November 20, 2009,

arguing that plaintiffs had failed to make a pre-suit demand on the board to take the action sued upon in the Amended Complaint.  The Court denied the motion in an Opinion dated February 26, 2010.  [DE 65].

On March 5, 2010, plaintiffs moved for a preliminary injunction under Rule 65, Fed. R. Civ. P., to enjoin the board from nominating Reese and Crowley for re-election in 2010.  [DE 67].  The motion sought to prevent Sears from putting Reese and Crowley on the proxy ballot for the election of directors at Sears' Annual Meeting of Shareholders, typically held each year in late April or early May.  At around the same time, counsel for the parties began to discuss a potential resolution of the matter.

The parties were before the Court for status conferences on March 11 and 18, 2010 in connection with plaintiffs' motion for a preliminary injunction.  The Court scheduled a hearing on the motion for March 24, 2010.  [DE 78].  The parties engaged in extensive written and documentary discovery.  On March 19, 2010, the parties entered into a written memorandum of understanding to settle the claims alleged in the Amended Complaint and informed the Court of that fact.

The parties thereafter engaged in confirmatory discovery, which included the depositions of Reese and Crowley, and worked on drafting and finalizing the formal Stipulation of Settlement and related papers that they filed on April 16, 2010.

On April 19, 2010, the parties appeared before the Court on their initial motion for preliminary approval of the Settlement.  The Court suggested changes to the form and manner of notice to shareholders.  The parties filed an Amended Stipulation of Settlement and related papers which are now before the Court.

## III.    ARGUMENT

### A.    The Standards Governing Preliminary Approval

Federal Rule of Civil Procedure 23.1(c) governs the settlement of derivative actions.  The Rule provides that derivative actions "may be settled, voluntarily dismissed, or compromised only with the court's approval."  FED. R. CIV. P. 23.1(c).  It further provides that "[n]otice of a proposed settlement . . . must be given to shareholders or members in the manner that the court directs."  *Id.*

This motion seeks preliminary approval, which is the first of a two-step process – final approval being the second step.  *Armstrong*, 616 F.2d at 314; *see* MANUAL FOR COMPLEX LITIGATION § 21.632 (2008 ed.).  The standards for preliminary approval are "not as stringent as those" for final approval.  *In re OCA, Inc. Sec. and Derivative Litig.,* No. 05-2165, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008).

To grant preliminary approval, a court "need only conclude that the settlement of the claims on the agreed upon terms is within the range of possible approval."  *Armstrong*, 616 F.2d at 314; *In re NVIDIA Corp. Deriv. Litig.,* No. 06-06110, 2008 WL 5382544, at *2 (N.D. Cal. Dec. 22, 2008).  This simply means that the Court must ascertain whether there is any reason to notify the shareholders of the settlement and hold a fairness hearing.  *Armstrong*, 616 F.2d at 314. *Accord In re OCA Inc.,* 2008 WL 4681369, at *11 ("If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval."); *Figueroa v. Sharper Image Corp.,* 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("By granting preliminary approval, the undersigned merely confirmed the

6

proposed settlement fell within the range of possible approval, and communicated that proposal to the class.").

Furthermore, there is a strong public policy favoring resolution of litigation through settlement. *Armstrong*, 616 F.2d at 312.  This is especially true with respect to "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re GMC Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  Settlements are particularly favored in shareholder derivative actions, which are "notoriously difficult and unpredictable." *In re AOL Time Warner Shareholder Deriv. Litig.*, No. 02cv6302, 2006 WL 2572114, at *3 (S.D.N.Y. Sept. 6, 2008).

Courts in this circuit have applied a variety of factors to class action settlements which have also been used to analyze the fairness and adequacy of derivative action settlements like this one. *See, e.g., Susquehanna Corp. v. Korholz,* 84 F.R.D. 316, 319-322 (N.D. Ill. 1979). Those factors are: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendants' ability to pay; (3) the complexity, length and expense of trial; (4) the amount of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the stage of the proceedings and the amount of discovery completed. *Peterson v. Arvida/JMP Partners, L.P. II*, No. 92 C 7148, 1994 U.S. Dist. Lexis 2109 at *13 (N.D. Ill. Feb. 23, 1994)(Guzmán, M.J.) (*citing Armstrong*, 616 F.2d at 614; MANUAL FOR COMPLEX LITIGATION at 56; 3B MOORE'S FEDERAL PRACTICE ¶23.80(4) at 23-488 (2d ed.)).

B.      **The Court Should Preliminarily Approve the Settlement**

When the relevant factors are applied from the list above, the proposed settlement is plainly fair, reasonable and adequate.

1.      <u>The strength of the case balanced against the settlement's terms.</u>

Although plaintiffs believe they have a strong case under Section 8 of the Clayton Act, the risks, complexity, and delays in proving the case weigh in favor of settlement.  The risk of loss was real. To begin with, there are few guiding precedents from the Courts on the legal standards to be applied to an action under Section 8.  Defendants were "geared up" to defend this case based on proof of that the "competitive sales" of the interlocking companies were *de minimus,* and that therefore the prohibitions of Section 8 did not apply at all.  The type and amount of proof needed to show competitive sales or even that the interlocking companies are competitors, is largely unsettled due to the relative infrequency of litigation in this area.  *See, e.g.,* B. Gerber*, Enabling Interlock Benefits While Preventing Anticompetitive Harm:  Toward an Optimal Definition of Competitors Under Section 8 of the Clayton Act,* 24 YALE J. ON REG. 107, 118 (Winter 2007).  Whether the Court would have applied a more intuitive approach to the concept of competitive sales or a more restricted, quantitative approach that defendants no doubt would have pressed, would have had a big effect on the outcome of the case.  This uncertainty presented a high risk that the action might be dismissed under the *de minimus* defense, either by this Court or on appeal.

Balanced against that risk of loss are the real benefits the settlement obtains. Like any settlement, it represents a compromise on both sides. Nevertheless, the compromise attained is a very good one for plaintiffs given the risks of litigation.

Crowley will step down as a director and officer.  By itself, this achieves half of the

relief plaintiffs sought.  Plaintiffs believe that the settlement is worth preliminarily approving even if this were the settlement's only term. But it is not; the settlement provides additional valuable relief.

Reese will be subject to the firewall regarding Sears' women's apparel and footwear business. Although Reese will remain a director, the firewall is sufficient to achieve the underlying purposes of Section 8 of the Clayton Act. The firewall will preclude Reese from participating in anti-competitive conduct – had the opportunity arisen -- relating to these businesses. And Reese can meaningfully absent herself from discussions and voting regarding the women's apparel and footwear business. Sears is broken into three business segments: Kmart; Sears Domestic; and Sears Canada.  These three segments sell a wide assortment of general merchandise, in addition to women's apparel, footwear, auto parts and auto repair services. For example, Kmart sells major home appliances, including Kenmore branded products, and offers in-store pharmacies. Its Super Centers include a full-service grocery.  Sears Domestic includes broadline stores selling an array of products, including home appliances, consumer electronics, tools and hardware, fitness, lawn and garden equipment, home fashion products, and in-home product repair services.  Sears Canada conducts retail operations in Canada similar to those of Sears Domestic, but with a greater emphasis on apparel and other softlines (sheets, pillows, etc.) than in the U.S. stores. *See* Sears 2009 Annual Report on Form 10-K, filed March 12, 2010, at 2-4 (available at www.sec.gov).

Lampert will also be subject to these firewall guidelines limiting his involvement in board discussions concerning the operation of the auto parts and auto service businesses. This is relief that was not even sued for in the Amended Complaint.

Finally, an additional independent – non-ESL Investments, Inc. – director will be added

to the board at or before the 2011 election of directors. This is relief that plaintiffs could not have won in this lawsuit. There is simply no way to compel Sears to add a director, unless it was done as part of a settlement.  And because this is not a large board, adding an independent director is meaningful and reduces the likelihood of the board's anticompetitive conduct.

The settlement obtains most of the lawsuit's objectives without the risk of continued litigation.  *See, e.g., In re AOL Time Warner,* 2006 WL 2572114, at *3 (approving derivative settlement and noting that "shareholder derivative actions are notoriously difficult and unpredictable"); *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995) (affirming the approval of a derivative action settlement and noting that the "odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful").  The Court should preliminarily approve it.

2.   <u>This case is complex, expensive and lengthy.</u>

Along these same lines, the complexity, expense and duration of the litigation also favor preliminary approval of the settlement.  Continuing this litigation would require the resolution of numerous complex issues of law, at the cost of considerable time and expense to Sears, the parties and the Court.  Experts on antitrust issues, such as competitive sales and relevant markets, would undoubtedly have been offered by defendants.  Fact discovery relating to Sears' apparel, auto parts and auto services businesses, would have gone on for many months.  This would have been expensive for both sides.  In a derivative suit like this, which seeks to aid the company, it is appropriate for the plaintiffs to be mindful of the cost the lawsuit is imposing on the company on whose behalf it is being prosecuted.  And certainly the costs and burdens of the litigation would only have increased with a trial.  *See AOL Time Warner, Inc.,* 2006 WL 2572114, at *5 ("this litigation boasts numerous defendants, multiple claims, and complex factual issues; the

10

prosecution of this Action would require the Company to incur substantial costs.  Termination of the litigation at this stage of the proceedings obviates the expenditure of any future time and expense in connection with this action," and will allow the Company to direct its full attention to its substantive business).

3.   <u>There is no collusion among the parties.</u>

The process that led to the settlement was undeniably fair.  Plaintiffs conducted pre- and post-filing investigations of the derivative claims and the events underlying those claims, including inspection, review and analysis of relevant public filings of Sears, AutoZone, Inc., AutoNation, Inc. and Jones Apparel and internal documents relating to competition in the auto and apparel business.   The parties also filed extensive legal memoranda with respect to Defendants' motion to dismiss the Complaint.   Plaintiffs sought and obtained significant discovery and moved for a preliminary injunction.  Plaintiffs obtained extensive confirmatory discovery, including the depositions of Crowley and Reese.  Approval of the settlement is not conditioned upon approval of plaintiffs' request for an award of fees and expenses. *See Maher v. Zapata Corp.*, 714 F.2d 436, 457 (5th Cir. 1983) (fact that settlement could be approved even without approval of plaintiff's request for fee award was some proof of absence of collusion).

The settlement itself is the result of good faith arm's-length bargaining. The parties reached this settlement only after extensive, adversarial negotiations.  All of these facts confirm the absence of collusion.

4.   <u>The litigation is at an advanced stage.</u>

The advanced stage of this litigation further supports preliminary approval.  Vigorous and contentious motion practice has been present from the beginning, including a motion to dismiss and one for a preliminary injunction. The settlement comes on the heels of extensive arm's-

length negotiations and pre-settlement discovery.  Even after reaching an agreement in principle, the parties continued meaningful discussions to reduce the settlement to writing and conducted meaningful confirmatory discovery, including the review of additional confidential Sears documents and the depositions of Reese and Crowley.

     5.    <u>The parties' experienced counsel support the settlement.</u>

The support for this settlement from the parties' experienced counsel also weighs in favor of preliminary approval.  Plaintiffs are represented by law firms with experience in class actions and shareholder derivative cases.  Defendants are also represented by law firms with vast class action and derivative experience representing defendants.  Significant weight is accorded the judgment of experienced counsel in analyzing a settlement's fairness. *See United Founders Life Ins. Co. v. Consumers National Life Ins. Co.*, 447 F.2d 647, 655 (7th Cir. 1971); *Boggess v. Hogan*, 410 F.Supp. 433, 438 (N.D. Ill. 1975).

**C.**    **The Court Should Approve the Manner and Form of Notice**

The Stipulation of Settlement provides for a long-form notice to be mailed to Sears shareholders and for a summary notice to be published on the internet.  Both notices are sufficiently clear; they plainly and succinctly inform Sears shareholders what the settlement is about, their rights and how to object, and the date of the fairness hearing.

The summary notice will be disseminated to Sears shareholders through a press release tickered to Sears' stock symbol.  The press release will be available on the internet and shareholders will be given a link where they can read, download and print a copy of the long-form notice.  In addition, Sears will mail the long-form notice to all shareholders.

Federal Rule of Civil Procedure 23.1, governing derivative actions by shareholders, requires "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to

shareholders or members in the manner that the court orders." FED. R. CIV. P. 23.1(c).  The rule provides courts with considerable discretion, within the circumstances of the particular case, to determine the manner in which notice will be provided.  *See, e.g., Maher v. Zapata Corp.,* 714 F.2d 436, 450-51 (5th Cir. 1983) (derivative action); *Kyriazi v. Western Elec. Co.,* 647 F.2d 388, 395 (3d Cir. 1981) (addressing discussion under Rule 23(d)(2)).

## IV.    CONCLUSION

For the foregoing reasons and on the foregoing authorities, the Court should grant this motion, and enter the proposed Preliminary Approval Order.

Dated: April 28, 2010                          Respectfully submitted,

                                               */s/ Matthew T. Hurst*
                                               **SUSMAN HEFFNER & HURST LLP**
                                               Matthew T. Hurst
                                               20 South Clark Street, Suite 600
                                               Chicago, Illinois 60603
                                               T: 312-346-3466
                                               F: 312-346-2829

                                               ***Liaison Counsel for Plaintiffs***

                                               **SARRAF GENTILE LLP**
                                               Ronen Sarraf
                                               Joseph Gentile
                                               116 John Street, Suite 2310
                                               New York, New York 10038
                                               T: 212-868-3610
                                               F: 212-918-7967

                                               **VIANALE & VIANALE LLP**
                                               Kenneth J. Vianale
                                               2499 Glades Road, Suite 112
                                               Boca Raton, Florida 33431
                                               T: 561-392-4750
                                               F: 561-392-4775

                                               ***Lead Counsel for Plaintiffs***