UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ROBERT F. BOOTH TRUST and RONALD GROSS, derivatively on behalf of nominal defendant SEARS HOLDING CORPORATION, <br><br> *Plaintiffs*, <br><br> v. <br><br> WILLIAM C. CROWLEY, *et al.*, <br><br> *Defendants*, <br><br> and <br><br> SEARS HOLDING CORPORATION, <br><br> *Nominal Defendant.* <br><br> THEODORE H. FRANK, <br><br> *Objector/Intervenor.* | No. 1:09-CV-05314 <br><br> Judge Ronald A. Guzmán <br><br> MOTION TO INTERVENE AND OBJECTION OF THEODORE H. FRANK; AND MOTION TO DISMISS UNDER RULE 23.1(a) <br><br> Date: August 27, 2010 <br> Time: 10:30 a.m. <br><br> FILED <br> 8-16-2010 <br> AUG 16 2010  JH <br><br> MICHAEL W. DOBBINS <br> CLERK, U.S. DISTRICT COURT |

Under Rule 23.1, a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders or members who are similarly situated." The plaintiffs here have brought a strike suit with no hope of benefiting the corporation or shareholders for the sole benefit of themselves and their attorneys. As such, the Court should reject the settlement, which makes shareholders worse off by providing for the payment of attorneys' fees without any offsetting benefit. At a minimum, if the Court accepts the settlement, the Court should not reward the Robert F. Booth Trust and its counsel for their self-

serving behavior, and should limit fees to a token amount. To protect the interests of shareholders and to protect his own interest as a shareholder, Proposed Intervenor Theodore H. Frank moves to intervene in this action pursuant to Fed. R. Civ. Proc. 24(a) and 24(b). Intervenor's proposed pleading is attached as Exhibit 1.

## ARGUMENT

### I. FRANK IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

1. Theodore H. Frank is a shareholder of Sears Holding Corporation. He purchased 100 shares on March 9, 2010. His address is 901 N. Monroe St., Apt. 1007, Arlington, Virginia 22201-2358. His telephone number is (703) 243-3090.

2. Frank is entitled to intervene in this action as a matter of right pursuant to Fed. R. Civ. Proc. 24(a). Rule 24(a)(2) mandates intervention as a matter of right for anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

3. Under Rule 24(a), a party moving to intervene must show that: (1) the motion is timely brought, (2) the intervenor has an interest relating to the subject of the pending action; (3) there is potential that the intervenor's interests will be impaired by disposition of the action in their absence; and (4) the intervenor's interests are not adequately represented by existing parties. *See Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694 (7th Cir. 2003); *Shea v. Angulo*, 19 F.3d 343, 346 (7th Cir. 1994). Each of these elements is present here.

4. The motion is timely. Frank's position in this case as an intervenor does not differ from his position in this case as an objector; because objections are due August 20, 2010, and this

motion for intervention predates that deadline, none of the parties will be prejudiced by his intervention. (Frank moves to intervene because the Seventh Circuit has not yet ruled whether *Devlin v. Scardeletti*, 536 U.S. 1 (2002), which permits appeal without intervention of a Rule 23 settlement approval, supersedes *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998), *aff'd by an equally divided Court, California Public Employees' Retirement System v. Felzen*, 525 U.S. 315, 119 S. Ct. 720, 142 L. Ed. 2d 766 (1999), which forbids such an appeal in the Rule 23.1 circumstance without intervention. *Cf. SEC v. Enter. Trust Co.*, 559 F.3d 649, 651 (7th Cir. 2009).) "The requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner. Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Utah Ass'n. of Counties v. Clinton*, 255 F.3d 1246, 1250 (2001) (*quoting Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)).

5. For example, in *Flying J., Inc. v. Van Hollen*, the Seventh Circuit reversed a district court's denial of a motion to intervene where the motion was, as here, intended to preserve appellate rights, even though the motion to intervene did not come until after the district court had issued an injunction. 578 F.3d 569 (7th Cir. 2009). Thus, the motion to intervene is timely.

6. Frank satisfies both the second and third requirements for intervention as of right. A party's interest is sufficient to justify intervention if it is "direct, significant, [and] legally protectable." *Sec. Ins. Co. v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995). This is true here, where Frank is a shareholder, and the self-appointed derivative shareholder has brought suit that harms the corporation's interests, and thus Frank's interests as a shareholder. *Cf. Felzen,*

134 F.3d at 876 ("Rule 23.1 provides for notice to shareholders only in the event of dismissal or settlement, so that other investors may contest the faithfulness or honesty of the self-appointed plaintiffs; we do not doubt that this monitoring is often useful and that intervention to facilitate an appeal could be justified.").

7. Finally, Frank also satisfies the fourth requirement for intervention as of right: his interests as a shareholder are not adequately protected by existing parties. As *Felzen* notes,

> Many thoughtful students of the subject conclude, with empirical support, that derivative actions do little to promote sound management and often hurt the firm by diverting the managers' time from running the business while diverting the firm's resources to the plaintiffs' lawyers without providing a corresponding benefit. Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions*, 43 Stan. L.Rev. 497 (1991); Reinier Kraakman, Hyun Park & Steven Shavell, *When are Shareholder Suits in Shareholder Interests?*, 82 Geo. L.J. 1733 (1994); Roberta Romano, *The Shareholder Suit: Litigation Without Foundation?*, 7 J.L. Econ. & Org. 55 (1991); Mark L. Cross, Wallace N. Davidson & John H. Thornton, *The Impact of Directors' and Officers' Liability Suits on Firm Value*, 56 J. Risk & Insurance 128 (1989); Daniel R. Fischel & Michael Bradley, *The Role of Liability Rules and the Derivative Suit in Corporate Law: A Theoretical and Empirical Analysis*, 71 Cornell L.Rev. 261 (1986).

*Id.* One hundred percent of the settlement proceeds in this settlement will go to the plaintiffs' lawyers, with zero to shareholders: this is precisely the "diver[sion of] the firm's resources to the plaintiffs' lawyers without providing a corresponding benefit" that the Seventh Circuit warned about. *Id.* (suggesting settlement providing 50% of benefit to attorneys is problematic). As defense counsel acknowledged at the July 9 hearing, this settlement, including the clear-sailing proposed attorneys' fee, is driven by the expense of litigation that plaintiffs' counsel could impose upon the corporation.

8. Frank intervenes solely in the interests of shareholders: he will not request any attorneys' fees from the corporation for his participation in the litigation; he will not agree to a

*quid pro quo* settlement with plaintiffs' attorneys to withdraw his objection. Frank is willing to stipulate to an injunction forbidding him from withdrawing any appeal without court approval.

## II. IN THE ALTERNATIVE, FRANK SHOULD BE PERMITTED TO INTERVENE UNDER RULE 24(B).

9. Rule 24(b) provides for permissive intervention as long as a timely application is made and the "applicant's claim . . . and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). As part of this determination, the courts consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*; see also *Southmark Corp. v. Cagan*, 950 F.2d 416, 419 (7th Cir. 1991).

10. As noted above, the motion to intervene is timely, as it has been filed before the deadline for objections, and is filed solely for the purposes of protecting appellate rights.

11. The questions of law and fact Frank will raise in any proceeding where he is permitted to intervene are coterminous with those Frank will raise in his objection, which the court will consider as part of the Rule 23.1 fairness hearing.

12. No delay or prejudice to the existing parties will occur if the motion to intervene is granted. Frank seeks to participate in an appeal of any decision to approve the settlement; if the settlement is approved, Frank will appeal regardless of whether the motion to intervene is granted. As such, Frank's participation will not prejudice the rights of existing parties. *Flying J., Inc.*, *supra*.

## III. THE PROPOSED SETTLEMENT SHOULD BE REJECTED AND THE CASE DISMISSED UNDER RULE 23-1(a).

13. The settlement provides zero for shareholders; its sole "benefit" is a resolution of the alleged interlocking directorate problem forbidden by the Clayton Act, but there is no evidence that this resolution improves the lot of shareholders.

---
Motion to Intervene and Objection of Theodore H. Frank; Motion to Dismiss
No. 1:09-CV-05314                                  5

14. The Clayton Act's provisions barring interlocking directorates are intended not to protect the corporation from wrongdoing directors, but as a prophylactic measure to protect consumers from corporate collusion that might unfairly raise prices to consumers and cause corporations to realize unfair profits. Shareholders would suffer no injury if that were true; indeed, shareholders would benefit if Sears realized excessive profits. To the extent there is any violation of the Clayton Act's prohibition on interlocking directorate, the only harm to shareholders is if there is a government fine for the violation.

15. The federal government has not issued a fine for a violation of the Clayton Act's interlocking directorate provisions during the Obama administration, George W. Bush administration, Clinton administration, or George H.W. Bush administration. On information and belief, the Reagan administration did not issue any fines for a violation of the Clayton Act's interlocking directorate provisions.

16. This was a "strike suit." Unscrupulous plaintiffs' attorneys bring a meritless lawsuit, and then threaten to force defendants to incur expensive discovery and litigation expenses unless the defendants agree to pay the plaintiffs' attorneys to go away. But in doing so, these attorneys make their putative clients worse off. This is a breach of the attorneys' fiduciary obligation to their clients to not put their own interests ahead of their clients. Fed. R. Civ. Proc. 23.1(a) requires the derivative shareholder to fairly and adequately represent shareholders. A derivative shareholder who brings litigation designed to benefit the plaintiffs' attorneys at the expense of their shareholder clients without any material benefit accruing to shareholders is plainly inadequate; it would be an abuse of the courts' equitable power to reward the attorneys for this self-dealing.

17.     The suit is meritless, and in parts arguably frivolous. Two causes of action are brought for injunctive relief under 15 U.S.C. § 26, but that relief is only available "against threatened loss or damage by a violation of the antitrust laws" where there is "a showing that the danger of irreparable loss or damage is immediate." The derivative shareholder plaintiffs cannot possibly meet either requirement: indeed, they explicitly disclaim any damages in their amended complaint. Moreover, the derivative shareholder plaintiffs do not claim to have suffered any antitrust injury entitling them to bring a cause of action under the Clayton Act. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977). Nor can the corporation, in whose shoes the derivative shareholder plaintiffs purport to sit, have suffered any antitrust injury or "threatened loss or damage."

18.     The sole evidence that this case is not a strike suit and that the settlement benefits shareholders is a statement in the settlement to that effect. But this evidence fails for two reasons.

19.     *First*, the statement is equivocal: it could merely mean that the settlement benefits shareholders because it reduces the expense of proceeding with litigation in the face of a burdensome strike suit. That is not evidence that the *litigation* benefited shareholders; indeed, it would mean the opposite.

20.     *Second*, the self-serving statement in the settlement contradicts the complaint. The complaint alleges that there is no damage from the alleged breach of fiduciary duty. But if there is no damage from the alleged breach of fiduciary duty, how can the *cure* of the alleged breach of fiduciary duty produce benefit? Either the breach of the fiduciary duty did damage shareholders (in which case both the complaint and settlement shows that the derivative shareholder does not fairly and adequately represent the shareholders), or the cure does not provide benefit to

shareholders (in which case the settlement is self-serving, which shows that the derivative shareholder does not fairly and adequately represent the shareholders). The plaintiffs cannot have it both ways.

21. On April 6, 2010, Sears issued a Schedule 14A statement reflecting the change in composition of the board of directors anticipated by this settlement and disclosing the existence of the memorandum of understanding that would lead to this settlement. *See* Sears Holding Corp. Sched. 14A at 6-7 (Apr. 6, 2010). If the market believed that the settlement made shareholders better off, Sears's stock price would have risen. But, in fact, the opposite occurred:



In the aftermath of the disclosure of the settlement agreement, the Sears stock price (in red) dropped for three consecutive days and substantially underperformed the Dow Jones Industrial Average (in blue). While this fact is not necessarily dispositive—there could have been other reasons why Sears stock underperformed the Dow Jones Industrial Average in this timeframe—it does show that one cannot simply believe the self-serving statements in the settlement agreement that the settlement benefits Sears and its shareholders without additional evidence supporting that fact. The parties have that burden, but have provided no evidence to rebut the fact that the stock price dropped in response to the settlement.

22. The complaint alleges no damage to shareholders from the shareholders' collective decision to legally elect two experienced board members. The injunctive relief does not make shareholders better off. The only thing this lawsuit has done is transfer money from shareholders like me to the plaintiffs' and defense attorneys and to distract executives and board members from more important and pressing issues. If the plaintiffs' attorneys were acting in the best interests of the shareholders, rather than themselves, they would not have brought this lawsuit, or, at a minimum, would have first made an inquiry to the board through a formal demand letter that could have saved all parties involved a lot of money. They thus do not "fairly and adequately represent the interests of shareholders." Rule 23.1(a). Moreover, as a matter of equity, this court should not award attorneys' fees to attorneys who have breached their fiduciary duty.

23. This lawsuit has thus made the plaintiffs' lawyers' putative client, Sears Holding Corporation and its shareholders, worse off, and the plaintiffs' attorneys are in breach of Fed. R. Civ. Proc. 23-1(a).

24. The settlement is impermissibly collusive. Though the lawsuit alleges wrongdoing by the *directors* of the corporation at the expense of the corporation, the settlement requires payment by the *corporation* to the plaintiffs' attorneys. To the extent the lawsuit has any merit, shareholders lose twice.

25. The "clear sailing" provision in the settlement whereby the defendant directors agree not to challenge the $925,000 attorney-fee request is further evidence of the collusive nature of the settlement meriting additional scrutiny. *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) (clear sailing agreements are evidence of impermissible collusion in settlements and require additional scrutiny); *Malchman v. Davis*, 761 F.2d 893, 906-08 (2d Cir.

---
Motion to Intervene and Objection of Theodore H. Frank; Motion to Dismiss
No. 1:09-CV-05314    9

1985) (Newman, J., concurring) ("It is unlikely that a defendant will gratuitously accede to the plaintiffs' request for a 'clear sailing' clause without obtaining something in return. That something will normally be at the expense of the plaintiff class"); *BTZ, Inc. v. Great N. Nekoosa Corp.*, 47 F.3d 463, 465 (1st Cir. 1995); *Levit v. Filmways, Inc.*, 620 F. Supp. 421, 423-24 (D. Del. 1985).

26. No action can be maintained unless the derivative shareholder fairly and adequately represents the interests of shareholders. Rule 23-1(a). Because this suit is brought to benefit the attorneys, rather than the interests of shareholders, this court is obligated to dismiss the action.

## CONCLUSION

27. Wherefore Objector/Intervenor Theodore H. Frank respectfully requests this court to (a) grant his motion for intervention; (b) reject the proposed settlement; and (c) dismiss the action with prejudice pursuant to Rule 23-1(a).

Dated: August 16, 2010

                                      Respectfully submitted,

                                      */s/Theodore H. Frank*
                                      Theodore H. Frank
                                      901 N. Monroe St. #1007
                                      Arlington, VA 22201-2358
                                      Telephone: (703) 243-3090
                                      Email: tedfrank@gmail.com
                                      *In pro per*

## PROOF OF SERVICE

I declare that:

I am employed in the state of Illinois. I am over the age of 18 years and not party to the within action; my office address is 312 N. May Street, Suite 100, Chicago, Illinois 60607.

On August 16, 2010, I served the attached:

MOTION TO INTERVENE AND OBJECTION OF THEODORE H. FRANK; AND MOTION TO DISMISS UNDER RULE 23.1(a)

__X__  By First-Class Mail in that I caused such envelope(s) to be delivered via First-Class Mail to the addressee(s) designated.

| | |
|---|---|
| Clerk of the Court<br>United States District Court<br>Northern District of Illinois<br>Everett McKinley Dirksen<br>United States Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604 | Kenneth J. Vianale, Esq.<br>VIANALE & VIANALE LLP<br>2499 Glades Road, Suite 112<br>Boca Raton, FL 33431<br>(561) 392-4750 |
| Christopher Q. King<br>Ramji Kaul<br>SONNENSCHEIN, NATH &<br>ROSENTHAL LLP<br>233 South Wacker Drive<br>Suite 7800<br>Chicago, Illinois 60606 | Paul Vizcarrondo, Jr.<br>Jonathan M. Moses<br>Amanda L. Straub<br>Jonathon R. La Chapelle<br>WACHTELL, LIPTON, ROSEN & KATZ<br>51 West 52nd Street<br>New York, New York 10019 |
| Matthew T. Hurst<br>SUSMAN HEFFNER & HURST LLP<br>20 South Clark Street, Suite 600<br>Chicago, Illinois 60603 | Ronen Sarraf<br>Joseph Gentile<br>SARRAF GENTILE LLP<br>116 John Street, Suite 2310<br>New York, New York 10038 |

I declare under penalty of perjury that the foregoing is true and correct.

This 16th day of August, 2010.

/s/ M. Frank Bednarz
M. Frank Bednarz

---

Proof of Service – Motion to Intervene and Objection of Theodore H. Frank
No. 1:09-CV-05314